IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02008-PAB-KLM

KEVIN TEDESCO,

    Plaintiff,

v.

EVELYN PEAK and
CHRISTOPHER HERMAN,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Defendant Herman's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 18] and Defendant Peak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 19]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

**I. BACKGROUND**

The allegations in plaintiff's Complaint with Jury Demand [Docket No. 1] are assumed to be true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

On March 24, 2016, plaintiff Kevin Tedesco ("Tedesco"), defendant Evelyn Peak ("Peak"), and defendant Christopher Herman ("Herman") went out for drinks in Colorado Springs, Colorado. Docket No. 1 at 3-4, ¶¶ 28-31. At that time, all three were employed at the El Paso County Sheriff's Office (the "Sheriff's Office") – Tedesco as a

sergeant and Peak and Herman as deputies.  *Id*. at 2-3, ¶¶ 16, 23, 26.  Tedesco and Peak were engaged and lived together.  *Id*. at 3, ¶¶ 22, 24.

When the bar closed at 2 a.m. on March 25, all three returned to Tedesco and Peak's house.  *Id*. at 4, ¶¶ 31-32.  At the house, Peak and Herman had a conversation, during which either Peak stated "I know Tedesco is cheating on me" or Herman told Peak that Tedesco was cheating on her.  *Id*. ¶ 33.  Peak confronted Tedesco, who had fallen asleep, repeatedly striking Tedesco to wake him up.  *Id*. ¶ 34.  Although Tedesco denied that he had been unfaithful, Peak continued to punch and slap Tedesco on his face and upper body.  *Id*. ¶¶ 35-36.  Tedesco called for Herman to join them.  *Id*. ¶ 37.  Tedesco asked Herman why he lied to Peak about Tedesco's infidelity.  *Id*.  Herman denied making any false statements.  *Id*.  Herman rushed at Tedesco, yelling "let's fight."  *Id*., ¶ 39.  Both men fell to the ground.  *Id*. ¶ 40.  Tedesco ordered Herman to leave, which he did; Peak left shortly afterwards.  *Id*. ¶¶ 41-42.

On June 7, 2016, Herman submitted a memorandum to the Sheriff's Office reporting that Tedesco had assaulted him.  *Id*. at 6, ¶ 53.  Peak encouraged Herman to write the memorandum.  *Id*.  The memorandum spawned both a criminal investigation and an internal investigation.  *Id*. ¶ 55.  Peak and Herman spoke to the detective running the criminal investigation; Tedesco invoked his right to remain silent.  *Id*. ¶¶ 56-57.  In the course of her interview, Peak stated that Tedesco assaulted Herman, although she also stated that he was acting in self-defense.  *Id*. ¶ 59.  In the internal investigation, Peak told the investigator that she slapped Tedesco, which she did not mention in the criminal investigation.  *Id*. ¶ 62.  As a result of the internal investigation,

Tedesco was demoted from sergeant to deputy. *Id*. at 7, ¶ 64. Peak and Herman were also disciplined. *Id*. ¶ 65.

On June 24, 2016, the El Paso County District Attorney's Office (the "DA's Office") charged Tedesco with third-degree assault of Herman, relying on the criminal investigation "along with Peak's and Herman's false statements." *Id*. ¶ 66. On January 20, 2017, Peak met with a district attorney and an investigator for a pre-trial witness interview on the condition that she receive immunity from prosecution. *Id*. at 8, ¶ 76. Tedesco alleges that Peak requested immunity because was worried that, if the DA's Office decided to charge her with domestic violence, she could lose her gun license and her position with the Sheriff's Office. *Id*. at 7, ¶ 72. Peak subsequently stated that Tedesco assaulted her and that she slapped him in response. *Id*. at 8, ¶ 77. Peak also stated that Tedesco harassed and stalked her. *Id*. Based on this testimony, the DA's Office charged Tedesco with felony stalking, felony menacing, domestic violence, and harassment. *Id*. ¶ 78.[1] On January 22, 2017, Tedesco turned himself in on an arrest warrant and spent a night in jail before being released on bond. *Id*. ¶¶ 79-80. On March 12, 2017, the Sheriff's Office informed Tedesco of its intent to terminate his employment. *Id*. ¶ 83. On April 18 and 19, 2018, Tedesco's trial took place. *Id*. at 10, ¶ 97. Tedesco, Peak, and Herman all testified. *Id*. ¶ 98. Tedesco alleges that both Peak and Herman made false claims under oath. *Id*. at 10-12, ¶¶ 99-100. The jury acquitted Tedesco of all charges. *Id*. at 12, ¶ 101.

---

[1] The felony stalking charge was later dropped and replaced by a third-degree assault charge. Docket No. 1 at 8, ¶ 81.

On August 8, 2018, Tedesco filed this lawsuit. Docket No. 1. Tedesco brings a single claim for relief under 42 U.S.C. § 1983, asserting that Peak's and Herman's actions violated Tedesco's rights under the Fourth Amendment by subjecting him to "false arrest, false imprisonment, and malicious prosecution." *Id*. at 13, ¶ 116. Peak and Herman subsequently filed motions to dismiss. Docket Nos. 18, 19. Peak and Herman argue that (1) they are entitled to qualified immunity; (2) Tedesco fails to allege a violation of his Fourth Amendment rights; and (3) Tedesco fails to allege that Peak and Herman were acting under color of law. *Id*.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

## III. ANALYSIS

Peak and Herman argue that Tedesco fails to state a claim under 42 U.S.C. § 1983 because he has failed to allege that Peak and Herman were acting under color of state law.[2] Docket No. 18 at 10-13; Docket No. 19 at 10-13. The Court turns to this argument first since, if Tedesco fails to allege that Peak and Herman were acting under color of state law, there is no need to consider their other arguments.

---

[2] It is unclear from Tedesco's complaint whether he sues Peak and Herman in their official capacities as well as their individual capacities. *See* Docket No. 1 at 14, ¶ 121 (alleging that "[d]efendants acted pursuant to the policy of the City of Colorado Springs and the El Paso County Sheriff's Office"). Even if the Court construed the claim as an official-capacity claim against El Paso County, it would fail. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (noting that a suit against a government official in his official capacity is a suit against the entity of which an officer is an agent.); *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) ("Under Colorado law municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.'") (citing Colo. Rev. Stat. §§ 31-15-101(1)(a) and (b) and 30-11-101(1)(a)). A local governing body may be sued under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that municipal liability attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). Other than the above-referenced conclusory statement, Tedesco fails to allege that Peak or Herman promulgated or acted in accordance with an unconstitutional "policy statement, ordinance, regulation, or decision" of El Paso County. *See* Docket No. 1. Thus, Tedesco cannot sustain an official-capacity claim against El Paso County.

To state a claim under 42 U.S.C. § 1983, plaintiff must allege that she was deprived of a right "secured by the Constitution or laws" of the United States and that this deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). For an act to be under color of law, "[f]irst, the deprivation of [a federal right] must be caused by the exercise of some right or privilege created by the State . . . [s]econd, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he [or she] is a state official, because he [or she] has acted together with or has obtained significant aid from state officials, or because his [or her] conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). It is plaintiff's burden to "plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *See Beedle v. Wilson*, 422 F.3d 1059, 1074 (10th Cir. 2005) (citation omitted).

"[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988). However, it is "well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) (citation and quotation omitted). Constitutional "standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v.*

6

*Yaretsky*, 457 U.S. 991, 1004 (1982). The color of law requirement applies to the conduct of police officers, whether the officer is on or off duty at the time of the alleged conduct. *David v. City and Cty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996). "The under color of law determination [for police officers] rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. Instead one must examine the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id*. (internal quotations and citations omitted).

Tedesco's theory as to why Peak's and Herman's conduct was under color of law is that "[t]he criminal charges against Tedesco were predicated entirely on Peak and Herman's false statements to the DA's [O]ffice in Peak and Herman's capacity as El Paso County Sheriff's Deputies." Docket No. 1 at 13, ¶ 115. Aside from this statement, the complaint offers little in the way of relevant allegations. The complaint alleges that Peak and Herman made false accusations in three settings that led to Tedesco's criminal prosecution: (1) Herman's June 7, 2016 memorandum to the Sheriff's Office; (2) Peak's and Herman's subsequent interviews with the detective investigating the criminal offense; and (3) Peak's January 20, 2017 pre-trial interview with a district attorney and an investigator. *See* Docket No. 1 at 6-8, ¶¶ 53-60, 66, 76.[3]

---

[3] The complaint includes a section alleging that Peak and Herman repeatedly perjured themselves while testifying in Tedesco's trial. Docket No. 1 at 10-12, ¶¶ 97-101. A trial witness sued pursuant to 42 U.S.C. § 1983 "has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)). Thus, Peak's and Herman's statements at trial cannot be a foundation for Tedesco's Fourth Amendment claim.

As he acknowledges, the crux of Tedesco's Fourth Amendment claim is that "[a]bsent [Peak's and Herman's] false accusations, there would have been no lawful basis to criminally prosecute Tedesco." *See* Docket No. 33 at 7. Tedesco argues that Peak and Herman submitted "false memorandums and false testimony to [the internal investigation], in their capacity as sheriff's deputies, which initiated the criminal proceedings against Tedesco." *See id*. at 15. The Court is not convinced that Peak's and Herman's participation in the internal investigation would be an action taken "under color of law." *See Myers v. Bowman*, 713 F.3d 1319, 1331 (11th Cir. 2013) (noting that defendant could have made a false report through means not connected to his government service). Moreover, although Tedesco cites case law for the proposition that "one has a constitutional right 'not to be deprived of liberty . . . as the result of the fabrication of evidence by a government officer acting *in an investigative capacity*,'" nowhere in the complaint does Tedesco allege that Peak and Herman were acting as investigators when they made these allegedly false accusations. *See* Docket No. 33 at 7-8 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (emphasis added).

Peak and Herman argue that Tedesco has only alleged that they acted as private individuals, rather than acted under color of state law. They contend that they were "victim[s] and witness[es]" to Tedesco's alleged actions rather than "investigator[s]." Both Peak and Herman argue that their acts, as alleged by Tedesco, were not within the scope of their authority as police officers. In assessing these allegedly false accusations, the Court agrees with defendants that *Myers* is instructive.

8

In *Myers*, a county magistrate judge used a court-issued communications device to report to a deputy clerk in his office that plaintiff had stolen his dog. *Myers*, 713 F.3d at 1323. The deputy clerk reported that information to the police, who arrested plaintiff. *Id*. Plaintiff brought a claim against the magistrate judge under § 1983 for false arrest. *Id*. at 1329. The Eleventh Circuit concluded that the magistrate judge did not act under color of state law in making his report because "the theft occurred in connection with a private dispute" and the alleged property stolen was private property. *Id*. at 1330; *see also Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. Unit A Jan. 26, 1981) (police chief who allegedly assaulted his sister in law not acting under color of state law, given that "the altercation arose out of an argument over family and political matters"). The court rejected the argument that the magistrate judge's use of a government-issued communications device was "under color of law," observing that the magistrate judge "could have reported the crime using a cellular phone or other device." *Myers*, 713 F.3d at 1331. Similarly, Peak and Herman reported the facts of a private dispute to the authorities – the Sheriff's Office and, subsequently, the DA's Office – and participated in the investigation as witnesses and victims rather than as investigators. Peak and Herman would have taken the same actions if they were not employed by the state. The complaint includes no allegation that Peak and Herman took an investigative role in prosecuting the case against Tedesco. *See* Docket No. 1 at 5-8, ¶¶ 50-83. Neither deputy, for example, wrote a formal report collecting statements from other witnesses, collected evidence, or engaged in law enforcement activity that led to Tedesco's prosecution.

9

Tedesco points to *Norton v. Liddel*, 620 F.2d 1375 (10th Cir. 1980), to argue that he has sufficiently alleged that there was "substantial 'entanglement' between [Peak and Herman] and other state actors which would clothe [d]efendants' actions with color [of] law." Docket No. 33 at 15 (quoting *Norton*, 620 F.2d at 1380). In *Norton*, plaintiffs alleged that a sheriff's deputy and an assistant district attorney conspired to file an information charging them with a felony. *Norton*, 620 F.2d at 1377. The Tenth Circuit held that the deputy's providing facts to the DA supporting the charge was not done under color of law because his role as prosecuting witness was "similar to that of any other citizen," given that under Oklahoma law only the office of the district attorney can file a criminal information. *Id*. at 1380. However, the Tenth Circuit concluded that plaintiffs' allegations of "entanglement" between the assistant district attorney, whose action in filing the information was taken under color of law, and the sheriff's deputy "clothe[d] [the deputy's] actions with color of state law." *Id*. at 1381. *Norton* supports Peak's and Herman's argument, not Tedesco's. Where a police officer provides the underlying facts supporting a prosecution, without more, his or her role is "similar to that of any other witness" and is not under color of law for the purposes of a malicious prosecution claim. *See id*. at 1380. Moreover, unlike *Norton*, Tedesco's complaint does not allege that the DA's Office conspired or was "entangled" with Peak or Herman that would "clothe" their report with the color of state law. *See id*. at 1381. The statement in Tedesco's response brief that he "sufficiently alleges that there was substantial 'entanglement' between [Peak and Herman] and other state actors" is conclusory and unsupported by the complaint. *See* Docket No. 33 at 15 (quoting

10

*Norton*, 620 F.2d at 1380). The only allegation of conspiracy or coordinated action is between Peak and Herman. *See, e.g.*, Docket No. 1 at 2, ¶ 6. Since the allegations in the complaint fail to support an inference of "entanglement" between Peak and Herman and state actors, dismissal of the complaint is appropriate. *See Bryson*, 534 F.3d at 1286 (noting that "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory" to survive a motion to dismiss).

Tedesco's complaint fails to allege that Peak's and Herman's conduct was under color of law. Therefore, Tedesco cannot sustain his claim for a violation of 42 U.S.C. § 1983, and the Court will grant Peak's and Herman's motions to dismiss.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Herman's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 18] is **GRANTED**. It is further

**ORDERED** that Defendant Peak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 19] is **GRANTED**. It is further

**ORDERED** that all claims against both defendants are dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 4, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge